UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARGARET GOETZEE NAGLE, ET AL., | * | CIVIL ACTION |
| Plaintiffs | * | |
| VERSUS | * | NUMBER: 12-1910 |
| | * | |
| SHERIFF MARLIN GUSMAN, ET AL., | * | SECTION: "R" |
| Defendants | * | |
| | * | JUDGE: Sarah S. Vance |
| | * | |
| | * | MAG. 2: Joseph C. Wilkinson, Jr. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS

### MR. GOETZEE COMMITS SUICIDE WHILE IN THE CUSTODY OF DEFENDANT GUSMAN, SHERIFF OF ORLEANS PARISH

1.    On August 7, 2011, William Wesley Goetzee ("Mr. Goetzee") died while in custody of Orleans Parish Sheriff Marlin Gusman (hereafter "Defendant Gusman" or "Sheriff Gusman"). [*See* **Pls.' Ex. 1**, "New Orleans Forensic Center Coroner's Report" ("Coroner's Report") at NO 000010; **Pls.' Ex. 2**, "Death Certificate of William Goetzee" ("Death Certificate") at NO 000045].

2.    Defendant Gusman was elected the Criminal Sheriff of Orleans Parish in 2004, 2006, and 2010. [*See* **Pls.' Ex. 3**, "Defendants' Request for Admission Response" ("Defs.' RTA Resp.") at Resp. #1 and #2].

3.    The separate Criminal and Civil Sheriffs of Orleans Parish, and their offices, were merged into one Orleans Parish Sheriff by law in 2010. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #3].

4.    The office of Orleans Parish Sheriff is the successor to the office of Orleans

Parish Criminal Sheriff. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #4].

5.  Defendant Gusman was Orleans Parish Sheriff in August 2011. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #5].

6.  As Orleans Parish Criminal Sheriff, Defendant Gusman was the final policymaker for the Orleans Parish Criminal Sheriff's Office. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #6].

7.  As Orleans Parish Sheriff, Defendant Gusman is the final policymaker for the Orleans Parish Sheriff's Office. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #7].

8.  In August 2011, Defendant Gusman operated Orleans Parish Prison ("OPP"), a jail complex consisting of various facilities, including the House of Detention ("HOD"). [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #8, #9].

9.  At the time of his death on August 7, 2011, Mr. Goetzee was being held on the 10th floor of the House of Detention ("HOD-10"), part of OPP. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #22].

10.  In August 2011, male prisoners at OPP who were on suicide watch were housed in HOD-10. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #10].

11.  At the time of his death on August 7, 2011, Mr. Goetzee was a pre-trial detainee being held on a charges relating to his August 2, 2011 attempt to commit suicide. [*See* **Pls.' Ex. 11**, OPSO Statement Regarding Inmate William Goetzee at Goetzee 000055].

12.  Mr. Goetzee's death was a suicide caused by asphyxiation, brought on by swallowing toilet paper. [*See* Pls.' Ex. 1, Coroner's Report at NO 000010; Pls.' Ex. 2, Death Certificate at NO 000045].

13.     At the time of his death, Mr. Goetzee was a commander in the U.S. Coast Guard reserve and civilian employee of the Coast Guard. [*See* Pls.' Ex. 2, Death Certificate at NO 000045; **Pls.' Ex. 4**, Declaration of Margaret Goetzee Nagle ("Nagle Decl.") ¶1].

14.     At the time of his death, Mr. Goetzee left no spouse, child, or parent surviving. [*See* Pls.' Ex. 4, Nagle Decl. ¶2].

15.     Margaret Goetzee Nagle and John Eric Goetzee ("Plaintiffs") are Mr. Goetzee's siblings and next of kin. [*See* Pls.' Ex. 4, Nagle Decl. ¶3].

16.     On July 23, 2012, Plaintiffs filed this action in the United States District Court for the Eastern District of Louisiana. [*See* **Pls.' Ex. 5**, *Margaret Goetzee Nagle and John Eric Goetzee v. Sheriff Marlin Gusman, et al.*, No. 12-1910 ("Complaint")].

### Mr. Goetzee is Arrested After Attempting Suicide

17.     On August 2, 2011, at approximately 10:55 a.m., Mr. Goetzee approached the passenger side of Federal Protective Services marked vehicle. [*See* **Pls.' Ex. 6**, Criminal Complaint and Affidavit of F.B.I. Special Agent Patrick B. Strawn ("Strawn Aff.") at NO 001240-42].

18.     Officer William Watson, wearing full law-enforcement uniform and sitting in the driver's seat of the vehicle, believed Mr. Goetzee was approaching the vehicle to ask a question, and thus rolled down the front passenger window. [*See* Pls.' Ex. 6, Strawn Aff. at NO 001241].

19.     Mr. Goetzee opened the front passenger side door, entered the vehicle, and sat down in the front passenger seat. [*See* Pls.' Ex. 6, Strawn Aff. at NO 001241].

20.     Upon being questioned by Officer Watson, Mr. Goetzee took a couple of deep breaths and lunged toward Officer Watson's service weapon. [*See* Pls.' Ex. 6, Strawn Aff. at

3

NO 001241-42].

21.    During the course of the struggle, Mr. Goetzee exclaimed "I want to kill myself, give me your gun." [*See* Pls.' Ex. 6, Strawn Aff. at NO 001241-42].

22.    With assistance from other federal law enforcement officers, Mr. Goetzee was eventually subdued and placed in handcuffs. [*See* Pls.' Ex. 6, Strawn Aff. at NO 001242].

23.    At approximately 11:23 a.m., an ambulance reached the location where Mr. Goetzee had been detained. [*See* **Pls.' Ex. 7**, New Orleans EMS Patient Care Report ("EMS Report") at NO 000388-89].

24.    The ambulance transferred Mr. Goetzee to Tulane Medical Center at or around 12:00 p.m. that day. [*See* Pls.' Ex. 7, EMS Report at NO 000388-89].

25.    At approximately 9:00 p.m. that day, Mr. Goetzee was taken to OPP for booking and remained there overnight. [*See* **Pls.' Ex. 8**, Booking Sheet at NO 000947].

26.    The next day, on August 3, 2011, Mr. Goetzee appeared before the Honorable Daniel E. Knowles, III, Magistrate Judge for the U.S. District Court for the Eastern District of Louisiana. [*See* **Pls.' Ex. 9**, *United States v. William Goetzee*, Initial Appearance (E.D. La. Aug. 3, 2011) ("Initial Appearance") at NO 000455-65].

27.    At the August 3, 2011 appearance, the Court noted that Mr. Goetzee attempted to, but was unable to complete a financial affidavit. The Court then ordered Mr. Goetzee detained pending a detention hearing set for August 5, 2011. [*See* Pls.' Ex. 9, Initial Appearance at NO 000460, 462-63].

28.    At or around 4:48 p.m. that day, Mr. Goetzee, still in custody, was admitted to University Hospital, to rule out Delirium ("R/O Delirium"). [*See* **Pls.' Ex. 12**, Medical Center

of LA at New Orleans Patient Information at NO 001009; **Pls.' Ex. 13**, Inmate Medical History Report at OPS 01969; **Pls.' Ex. 10**, Medical Route Form Rule out Delirium at NO 000677].

29.   On August 5, 2011, Mr. Goetzee's attorney appeared before Magistrate Judge Knowles; Mr. Goetzee was not present. [*See* **Pls.' Ex. 14**, *United States v. William Goetzee*, Hearing (E.D. La. Aug. 5, 2011) ("Aug. 5 Hearing") at NO 000466-470].

30.   At the August 5, 2011 hearing, the attorney for the United States stated that Mr. Goetzee had been hospitalized since the August 3 appearance and would continue to be hospitalized pending a complete psychiatric evaluation. [*See* Pls.' Ex. 14, Aug. 5 Hearing at NO 000466-70].

31.   At or about 4:00 pm on August 5, 2011, Mr. Goetzee was discharged from University Hospital with a diagnosis of "Psychosis – [Not Otherwise Specified]" and transferred to OPP. [*See* **Pls.' Ex. 15**, Medical Center of New Orleans Medical Data at NO 001006; **Pls.' Ex. 16**, LSU Public Hospital Discharge Orders ("Discharge Orders") at NO 001008; **Pls.' Ex. 17**, Inmate Reassignment Form ("Reassignment Form") at NO 000674].

32.   Upon his discharge from University Hospital, Mr. Goetzee was referred to Dr. Michael Higgins, the OPSO's Mental Health Director. Upon arrival at OPP, at or about 4:16 p.m., Mr. Goetzee was transferred to HOD-10. [*See* Pls.' Ex. 16 Discharge Orders at 001008; Pls.' Ex. 17, Reassignment Form at NO 000674].

**MR. GOETZEE COMMITS SUICIDE WHILE IN OPP CUSTODY**

33.   On August 6 and 7, 2011, while Mr. Goetzee was in custody of Defendant Gusman and held in HOD-10, he was under direct observation and on suicide watch. [*See, e.g.*, **Pls.' Ex. 19**, Medical Assessment: Suicide Watch ("Suicide Watch") at NO 000652-62].

34.     Suicide watch medical assessments conducted by nursing staff on August 6-7, 2011, report that Mr. Goetzee continued to have suicidal ideation. [*See, e.g.*, Pls.' Ex. 19, Suicide Watch at NO 000652-56, 658-62].

35.     For the duration of Mr. Goetzee's incarceration at OPP, Defendant William A. Thompson ("Defendant Thompson") was employed by Defendant Gusman, Orleans Parish Sheriff. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #11].

36.     At all relevant times that Mr. Goetzee was incarcerated at OPP, Defendant Thompson was commissioned as a deputy of the Orleans Parish Sheriff's Office. [*See* **Pls.' Ex. 18**, William Thompson 2010 Commission Renewal Slip ("Renewal Slip") at WT 000265].

37.     On August 7, 2011, Defendant Thompson was assigned to work at HOD-10. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #12].

38.     Defendant Thompson's regular duties and assignments while working at HOD-10 included monitoring the tiers for inmate and staff safety, directly supervising inmates placed on suicide watch, assisting other deputies and jail staff, distributing meals to inmates ("feed up"), and reporting to his supervisors regarding assignments. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #15-18, #21].

39.     On August 7, 2011, the standard shift for corrections officers and deputies working at HOD-10 was 12 hours. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #13].

40.     On the morning of August 7, 2011, Defendant Thompson began a 12 hour shift at HOD-10. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #14].

41.     In August of 2011, it was required that an Orleans Parish Sheriff's Office employee maintain direct and constant observation of any HOD-10 inmate on suicide watch at all times. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #23].

42.     On the morning of August 7, 2011, Defendant Thompson was assigned to conduct direct supervision of Mr. Goetzee, who was on suicide watch at HOD-10. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #22].

43.     On August 7, 2011, as part of his assignment to directly supervise Mr. Goetzee, Defendant Thompson was required to note Mr. Goetzee's status every 15 minutes on an Observation or Restraint Checklist. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #24].

44.     On August 7, while Defendant Thompson was assigned to continuously monitor Mr. Goetzee, Defendant Thompson repeatedly left his post and left Mr. Goetzee unobserved. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #25, #27, and #29].

45.     On August 7, Defendant Thompson left his post to help another Sheriff's employee distribute meals to inmates other than Mr. Goetzee. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #25].

46.     On August 7, Defendant Thompson also left his post to take a restroom break, [*See* Pls.' Ex. 3. Defs.' RTA Resp. at #27].

47.     On August 7, Defendant Thompson also left his post and went to the HOD-10 nurses' station. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #29].

48.     Each time that Defendant Thompson left his assigned post, thereby failing to continuously monitor Mr. Goetzee, no other staff took Defendant Thompson's place directly observing Mr. Goetzee. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #26, #28, and #30].

49.     The nurses' station at HOD-10 is located in an area where it is not possible to be in that station and be able to simultaneously maintain direct, continuous observation of an inmate in the cell where Mr. Goetzee was housed on August 7, 2011. [*See* Pls.' Ex. 3, Defs.'

RTA Resp. at #67].

50.    While Defendant Thompson was in the nurses' station not observing Mr. Goetzee, an HOD inmate approached the front security gate to notify the OPP officer on duty that Mr. Goetzee was lying on the floor of his cell, unresponsive. [*See* **Pls.' Ex. 21**, Special Operations Division Memo re: Death of Inmate William Goetzee at OPS 005116; **Pls.' Ex. 22**, OPSO Aug. 8, 2011 Incident Report at NO 000724].

51.    New Orleans Emergency Medical Services ("EMS") personnel reached Mr. Goetzee at approximately 6:41 p.m. [*See* Pls.' Ex. 3, Defs.' RTA Resp. at #81].

52.    EMS personnel were unable to revive Mr. Goetzee, and Mr. Goetzee was subsequently pronounced dead at LSU Interim Hospital. [*See* Pls.' Ex. 2, Death Certificate at NO 000045].

53.    Mr. Goetzee died of asphyxiation as a result of his airway being obstructed by a bolus of toilet paper. [*See* Pls.' Ex. 1, Coroner's Report at NO 000010; Pls.' Ex. 2, Death Certificate at NO 000045].

54.    A subsequent "Psychological Autopsy" of Mr. Goetzee, performed by Dr. Higgins, the OPSO's Mental Health Director, confirmed that Mr. Goetzee was ordered to be under "direct observation until the time of his death; however, security failed to provide the continuous observation allowing Mr. Goetzee to kill himself." [*See* **Pls.' Ex. 23**, Orleans Parish Criminal Sheriff's Office Medical Department Psychological Autopsy ("Psychological Autopsy") at OPS 000349-50].

### DEFENDANT THOMPSON PLEADS GUILTY TO A FELONY IN CONNECTION WITH MR. GOETZEE'S DEATH

55.    On June 15, 2012, as a result of his conduct in connection with Mr. Goetzee's death, Defendant Thompson pleaded guilty to the charge of malfeasance in office in case

number 510-225, *State of Louisiana vs. William A. Thompson*. [*See* Pls.' Ex. 3, Defs.' RTA

Resp. at #69; **Pls.' Ex. 24**, *State of Louisiana v. William Thompson*, Case No. 510-225,

Transcript of Boykin Examination Hearing ("Boykin Hearing") at NO 001285-98].

56.    Malfeasance in office is a felony under Louisiana Law, punishable by a maximum

penalty of five years of incarceration. [*See* **Pls.' Ex. 25**, "La. Rev. Stat. § 14:134"].

57.    Malfeasance in office is committed, in relevant part, when any public officer or

public employee: "(1) Intentionally refuse[s] or fail[s] to perform any duty lawfully required of

him, as such officer or employee; or (2) Intentionally perform[s] any such duty in an unlawful

manner." [*See* Pls.' Ex. 25, La. Rev. Stat. § 14:134].

58.    At Defendant Thompson's guilty plea, the State proffered, and Defendant

Thompson, under oath, accepted the following factual basis for the charge of Malfeasance in

Office:

    a.  In August of 2011, Mr. Goetzee was transferred into custody of the Orleans

Parish Criminal Sheriff, incarcerated at OPP HOD-10, and placed under

suicide watch. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001292].

    b.  Defendant Gusman's policy regarding detainees under suicide watch dictates

that a deputy must continuously monitor the detainee and must also complete

an observations and a restraint checklist. [*See* Pls.' Ex. 24, Boykin Hearing at

NO 001292-93].

    c.  On August 7, 2011, beginning at 10:20 a.m., Defendant Thompson, then an

Orleans Parish Sheriff's deputy, was assigned to continuously monitor Mr.

Goetzee in HOD-10. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

d. Defendant Thompson left his post three times during the course of his assignment, for one and a half hours, fifteen minutes, and two hours, respectively. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

e. At approximately 5:45 p.m., at a time when Defendant Thompson was not monitoring Mr. Goetzee, an inmate awoke to find Mr. Goetzee unconscious in his cell. The inmate yelled for help. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

f. Deputy Michael Williams arrived first and alerted the nurse on charge. Defendant Thompson, who was in the nurse's station at the time, followed the nurse to the cell. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

g. Medical staff attempted to revive Mr. Goetzee, without success. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

h. Mr. Goetzee died from asphyxiation as a result of swallowing toilet paper. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

i. Defendant Thompson submitted an observation checklist for August 7, 2011, falsely indicating that he had viewed Mr. Goetzee continuously from 10:22 a.m. until 6:15 p.m. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

j. This observation checklist contained false information, because Thompson had not been continuously watching Mr. Goetzee on August 7, 2011. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001293].

59. At his guilty plea hearing, Defendant Thompson stated that he understood the allegations against him and had discussed the allegations with his counsel. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001294].

10

60.     In response to a question from the Court, Defendant Thompson agreed that he was pleading guilty because he was, in fact, guilty of the charge of Malfeasance in Office. [*See* Pls.' Ex. 24, Boykin Hearing at NO 001294].

## DEFENDANT THOMPSON'S DEPOSITION CONFIRMS THESE FACTS

61.     Defendant William Thompson was deposed in this action on Monday, January 13, 2014, at the Law Offices of Mary E. Howell, 316 S. Dorgenois Street, New Orleans, Louisiana, 70119. [*See* **Pls.' Ex. 26**, *Margaret Goetzee Nagle, et al. v. Sheriff Marlin Gusman, et al.*, Deposition of William Thompson at 1 (E.D. La. Jan. 13, 2014) ("Thompson Dep.")].

62.     At his deposition, Defendant Thompson admitted that the statements he made to the Court during his plea hearing were true and accurate. [*See* Pls.' Ex. 26, Thompson Dep. at 26-31].

63.     Defendant Thompson further admitted that he was aware that any inmate with active suicidal ideations should be directly observed at all times, that periodic monitoring was insufficient, and that continuous direct observation was required. [*See* Pls.' Ex. 26, Thompson Dep. at 32-34].

64.     Defendant Thompson understood, on August 7, 2011, that any inmate on suicide watch had the potential risk of killing himself, and that it could happen quickly if the inmate was not continuously monitored. [*See* Pls.' Ex. 26, Thompson Dep. at 45-46].

65.     Defendant Thompson admitted that, on August 7, 2011, he understood that Mr. Goetzee was at substantial risk of hurting or killing himself, was suicidal, was on suicide watch, and that the only way to make sure Mr. Goetzee didn't kill himself was through continuous observation. [*See* Pls.' Ex. 26, Thompson Dep. at 46-47].

66.    Defendant Thompson admitted that on the morning of August 7, 2011, on at least two occasions, Mr. Goetzee asked Defendant Thompson for a gun. [*See* Pls.' Ex. 26, Thompson Dep. at 38-39, 46, 123, 212].

67.    Finally, Defendant Thompson admitted that despite Mr. Goetzee's suicidal status and the requirement that he be under continuous observation, Defendant Thompson chose not to watch Mr. Goetzee for many hours on August 7, 2011. [*See* Pls.' Ex. 26, Thompson Dep. at 29, 43].

### DEFENDANT THOMPSON WAS EMPLOYED AS A DEPUTY BY THE ORLEANS PARISH SHERIFF'S OFFICE AND WAS TRAINED IN SUICIDE PREVENTION

68.    Since at least September 9, 2004, it was the policy of the Orleans Parish Criminal Sheriff's Office that all security personnel, including correctional officers, complete the Peace Officer Standards Training (a/k/a Peace Officers Skills Training) (hereinafter "POST"). [*See* **Pls.' Ex. 27**, Orleans Parish Criminal Sheriff's Office 2004 Peace Officer Skills Training ("POST") for Security Personnel ("2004 POST") at OPS 04740; **Pls.' Ex. 28**, Orleans Parish Sheriff's Office 2009 Peace Officer Standards and Training ("P.O.S.T.") for Security Personnel ("2009 POST") at OPS 04915].

69.    The Orleans Parish Criminal Sheriff's Office required that certified correctional officers "adhere to the policies and procedures contained in the [POST] Manual, of which all deputies shall receive a copy." [*See* Pls.' Ex. 27, 2004 POST at OPS 04740; Pls.' Ex. 28, 2009 POST at OPS 04915].

70.    On July 3, 2007, Defendant Thompson completed the Certified Correctional Officer Training Course, as provided for in the laws of the State of Louisiana, and was certified as a Basic Correctional Peace Officer by the State of Louisiana POST Council. [*See* **Pls.' Ex.**

**29**, State of Louisiana Basic Correctional Peace Officer Certification of William A. Thompson at WT 000278].

71.     The POST curriculum for Basic Correction Peace Officer certification included training regarding suicide prevention. [*See* **Pls.' Ex. 20**, POST Curriculum Chart at OPS 01517].

72.     POST suicide prevention training included training "in recognition in policies and procedures for an inmate that may be possibly considering suicide or initial medical screening for an inmate that may be a possible suicide risk upon that inmate being booked into the jail." [*See* **Pls.' Ex. 30**, Louisiana POST Jail & Corrections Training Curriculum ("POST Training Curriculum") at OPS 01999].

73.     The POST training taught that two of the "greatest myths in regard to Suicide are: [1] 'People who make suicidal threats don't commit suicide'. And [2] 'You can't stop someone who is truly set on killing themselves'." [*See* Pls.' Ex. 30, Post Training Curriculum at OPS 02399 and 02435].

74.     POST Guidelines state that it is "the Corrections Officer's responsibility to watch for and react to any inmate that is displaying suicidal tendencies. Every threat of suicide must be taken seriously and appropriate actions taken by the Corrections Officer to prevent any inmate from harming himself." [*See* Pls.' Ex. 30, Post Training Curriculum at OPS 02399-400].

75.     POST suicide prevention training also included training regarding "Suicide Watch Techniques" once an inmate is considered a suicide risk. [*See* Pls.' Ex. 30, Post Training Curriculum at OPS 01999].

76.     The POST Training Manual states that "[s]uicidal" inmates "[s]hould be housed

13

in a designated 'Suicide Watch' area." [*See* Pls.' Ex. 30, Post Training Curriculum at OPS 02240].

77.    The POST Training Manual lists "[f]ailure to observe an inmate on suicide watch" as an example of a "Wrongful Death" tort. [*See* Pls.' Ex. 30, Post Training Curriculum at OPS 02208, 02215].

78.    On July 3, 2007, Defendant Thompson signed an oath of office, pledging to faithfully and impartially discharge and perform the duties incumbent on him as a Deputy Sheriff. [*See* **Pls.' Ex. 31**, William Thompson 2007 Oath of Office ("Thompson Oath") at WT 000271].

79.    From 2007 through 2011, Defendant Thompson was repeatedly certified as a Deputy of the Criminal Sheriff's Department of Orleans Parish in Louisiana. [*See, e.g.*, Pls.' Ex. 18, William Thompson Commission Renewal Slips at WT 000269 (exp. 7/3/08), WT 000268 (exp. 10/24/09), WT 000265 (exp. 5/28/11), and WT 000264 (exp. 5/11/12)].

80.    As of at least October 15, 2007, through August 7, 2011, it was the Sheriff's policy that "all inmates with active suicidal ideation are to be directly observed by the Security staff at all times." The policy stated that periodic monitoring was insufficient because "the few moments required to successfully commit suicide necessitates continuous, direct observation." [*See* **Pls.' Ex. 32**, Office of the Criminal Sheriff Oct. 15, 2007 Interoffice Memorandum Regarding Observation of Suicidal Inmates at OPS 00693].

14

Dated: New York, NY
        May 16, 2014

                                        Sincerely,


                                        /s/ Emma Freudenberger
                                        Nick Brustin, NY Bar No. 2844405
                                        Emma Freudenberger, NY Bar No. 4538070
                                        Alexandra Lampert, NY Bar No. 5085915
                                        Farhang Heydari, NY Bar No. 5065693
                                        NEUFELD SCHECK & BRUSTIN, LLP
                                        99 Hudson Street, 8th Floor
                                        New York, NY 10013
                                        (212) 965-9081


                                        /s/ Mary E. Howell
                                        Mary E. Howell, LSBA #7030
                                        Attorney at Law
                                        316 S. Dorgenois Street
                                        New Orleans, LA 70119
                                        (504) 822-4455

                                        *Attorneys for Plaintiffs Margaret Goetzee Nagle &*
                                        *John Eric Goetzee*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of *Plaintiffs' Rule 56.1 Statement of Undisputed Facts* was served *via* ECF and U.S. mail on May 16, 2014, on all parties of record:

Sheriff Marlin N. Gusman, Dr. Samuel Gore, Dr. Charles Higgins, Dr. Jose Ham, Mary Anne Benitez, Darryl Jackson, PLN Wallace, S. Pembo, S. Batiste, David Schaible, E. Bargky, C. Johnson, Warden Carlos Louque, Sgt. Nicole Harris, Sgt. Everett Marshall, Deputy Michael Williams, and Deputy Shelia Crader

*through their attorneys of record*

Freeman R. Matthews and
Black J. Arcuri
Usry, Weeks and Matthews
1615 Poydras Street, Suite 1250
New Orleans, LA 70112
(504) 592-4600
barcuri@uwmlaw.com


And by U.S. Mail on the following party:

William Thompson
3020 Rue Parc Fontaine
Apt. 1131
New Orleans, LA 70131


/s/ Emma Freudenberger
Emma Freudenberger
*Attorney for Plaintiffs*

16