**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| MARGARET GOETZEE NAGLE, ET AL | * | CIVIL ACTION |
| Plaintiffs | * | |
| VERSUS | * | NUMBER: 12-1910 |
| | * | |
| SHERIFF MARLIN GUSMAN, ET AL | * | SECTION: "R" |
| Defendants | * | |
| | * | JUDGE: Sarah S. Vance |
| | * | |
| | * | MAG. 2: Joseph C. Wilkinson, Jr. |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION TO DETERMINE CONFLICT-FREE REPRESENTATION**

NOW INTO COURT, through undersigned counsel, come the Plaintiffs, who submit this Memorandum in support of Plaintiffs' Motion to Determine Conflict-Free Representation.

**INTRODUCTION**

In August of 2011, Mr. William Goetzee committed suicide while on suicide watch in the Orleans Parish Prison's House of Detention, when a Sheriff's deputy who was assigned to watch him left his post. Mr. Goetzee's next of kin, his brother and sister, have brought this civil action against several defendants in their individual capacities—including the Sheriff of Orleans Parish, Marlin Gusman, and current and former employees of the Sheriff—for their responsibility in Mr. Goetzee's death. Plaintiffs seek both compensatory and punitive damages against all individual defendants. In addition, Plaintiffs have brought a claim against Sheriff Gusman in his official capacity, and other policymaking defendants in their official capacities,[1] under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that Mr. Goetzee's death was the result of an unconstitutional policy or custom of the Orleans Parish Sheriff's Office.

---

[1] Those defendants include Dr. Samuel Gore (Medical Director) and Dr. Higgins (Director of Psychiatric Services).

1

Currently, all defendants in this matter, with the exception of former Sheriff's Deputy William Thompson,[2] are represented by the same attorneys: counsel at the law firm of Usry, Weeks and Matthews, and counsel at the law firm of Gauthier, Houghtaling and Williams, LLP, who recently enrolled in this case. Plaintiffs are concerned that this concurrent representation of both the entity of the Sheriff's Office, as well its supervisory and lower-level defendants, is an actual conflict of interest that threatens the integrity of the proceedings, and puts a successful Plaintiffs' verdict at risk on appeal. *See, e.g.*, *Dunton v County of Suffolk,* 729 F.2d 903 (2nd Cir. 1984), *amended in part on other grounds*, 748 F.2d 69 (2nd Cir. 1984) (reversing plaintiffs' verdict against police officer in a civil rights case where same attorneys represented the officer and municipality); *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex 1981) (finding joint representation of police officer and city by same attorney was conflict of interest, and that in the circumstances, the "potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants"). At the very least, this is a potential conflict of interest that must be addressed.

Plaintiffs' counsel initially raised this conflict with counsel for the defendants and explained that we believe a written commitment by the Sheriff to indemnify all defendants for compensatory and punitive damages would remedy the conflict.[3] Defense counsel responded that

---

[2] Deputy Thompson was the deputy assigned to watch Mr. Goetzee while on suicide watch; he was criminally prosecuted and pleaded guilty to malfeasance in office for his role in Mr. Goetzee's death. He was terminated from the Sheriff's office and is no longer employed there. The Sheriff's attorneys declined to represent Mr. Thompson at the outset of this litigation; Mr. Thompson is proceeding *pro se*.

[3] *See, e.g.*, *Lieberman v. City of Rochester*, 681 F. Supp. 2d 418, 427-28 (W.D.N.Y. 2010) (finding that fact the municipality "has affirmed that the Officers were acting within the scope of their employment" and would thus "indemnify the Officers for compensatory and punitive damages, distinguishes this case from *Dunton* and makes disqualification at this stage inappropriate").

the Sheriff is not prepared to make that commitment at this time. Subsequently, defense counsel served responses to interrogatories indicating that counsel has not committed even to representing each of the individual defendants for purposes of Plaintiffs' claims for punitive damages.[4] A number of depositions of defendants are scheduled to take place on November 10–14, 2014. Plaintiffs are concerned about proceeding with those depositions without having resolved these potential conflicts and without assurance that the individual defendants are in fact represented on all of Plaintiffs' claims. Adding to Plaintiffs' concerns, at recent depositions two lower-level defendants testified that they had not even understood, prior to arriving at their deposition, that they were named defendants in the case at all.[5]

Plaintiffs briefly raised this issue with the Court on October 8, 2014 and it was agreed that Plaintiffs would submit a brief on this issue. In order to ensure the integrity of these proceedings and to avoid any potential problems as this matter proceeds through trial, Plaintiffs

---

[4] Plaintiffs served interrogatories on all defendants asking for each defendant's understanding as to whether the Sheriff's Office was indemnifying them for compensatory and punitive damages, and whether the Sheriff's Office was representing them in connection with any claim brought for punitive damages. On October 3, 2014, counsel sent a response that there is "No understanding at this time" with respect to all questions, but did not specify on whose behalf the questions were being answered. *See* Exhibit A. Defendants were ordered by Magistrate Judge Wilkinson to provide verification of those interrogatory answers on behalf of each defendant by October 17, 2014. *See* Dkt. No. 99. Despite the Court's order, counsel has thus far only served verified responses on behalf of three of the defendants: Sheriff Marlin Gusman, Dr. Gore, and Carlos Louque. *See* Exhibit B. Those responses still do not provide any clear answers, but continue to assert that those defendants have "No understanding at this time."

[5] *See* Exhibit C, Tr. of Deposition of Nurse Esma Bargky, Aug. 21, 2014, page 22, lines 9–23 ("Q. Okay. So is it fair to say whatever --whatever communications you had . . . leaving aside what happened in the substance of those communications, prior to coming here today, you did not fully understand that Mr. Goetzee's family has sued you, Esma Bargky in this litigation. Is that correct? A. No, ma'am. Q. Okay. So in other words -- A. That's correct."); Exhibit D, Tr. of Deposition of nurse practitioner Charlene Johnson, Sept. 30, 2014, page 7, lines 6-16 ("Q. You understand Mr. Goetzee's family has sued you personally for your role in his death, correct? A. Yes. I do now.  Q. When did you first learn that? A. Just a few minutes ago. Q. So before showing up here for the deposition, about five minutes ago, you were not aware that Mr. Goetzee's family had sued you personally, correct? A. Correct.").

now respectfully request a hearing to address the conflict of interest caused by the concurrent

representation of both the Sheriff and the other individual defendants absent an agreement to

indemnify. Specifically, Plaintiffs request a hearing at which the Court would determine which

parties' interests—if any—are sufficiently aligned to permit representation by the same counsel,

and which are not.[6]

## LEGAL STANDARDS

Federal courts assessing conflicts of interest apply local ethical rules, which may be

adopted by the court, although ultimately the issue is one of federal law. *In re American Airlines,*

*Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). The United States District Court for the Eastern District

of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar

Association. *See* Local Civil Rules of the U.S. District Court for the Eastern District of Louisiana

(revised Sept. 1, 2014), Rule 83.2.3. The applicable Louisiana Rule of Professional Conduct

governing conflicts of interest is Rule 1.7. It states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the
> representation involves a concurrent conflict of interest. A concurrent conflict of
> interest exists if:
>> (1) the representation of one client will be directly adverse to another
>> client; or
>> (2) there is a significant risk that the representation of one or more clients
>> will be materially limited by the lawyer's responsibilities to another client,
>> a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a),
> a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide
>> competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;

---

[6] Prior to such a hearing, Plaintiffs will decide which Defendants may be able to be dropped from
the case.

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

Louisiana's rule is identical to the ABA Model Rule of Professional Conduct 1.7 (2002). The Comments to the ABA Model Rule 1.7 further explain that, with respect to concurrent representation of codefendants, "A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question."

In addition, conflicts are imputed to all members of a law firm. Under Louisiana Rule of Professional Conduct 1.10, when lawyers are associated in a firm, "none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 [concurrent conflicts] or 1.9 [former clients], unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." In the Fifth Circuit, "there is an irrebuttable presumption that 'confidences obtained by an individual lawyer will be shared with the other members of his firm.'" *Hampton v. Daybrook Fisheries, In*c., CIV. A. 01-1913, 2001 WL 1444933, at *2 (E.D. La. Nov. 14, 2001) (quoting *In re American Airlines*, 972 F.2d at 614).

## ARGUMENT

### A. Concurrent representation of the Sheriff, supervisory defendants, and lower-level defendants, is an actual, or at least significant potential, conflict of interest

Defense counsel's concurrent representation of all but one of the defendants in this case, including the Sheriff himself, as well as jail supervisors and lower-level employees, presents several clear conflicts of interest under Rule 1.7 and federal law.

First, absent an agreement to indemnify for all claims, the interests of the Sheriff in his official capacity, with respect to Plaintiffs' *Monell* claim, and the interests of the other defendants, are directly adverse to one another. As the Fifth Circuit explained in *Van Ooteghem v. Gray*, after the Supreme Court's decision in *Monell* allowed suits against local governmental entities, a "serious problem of conflict of interest could exist" in cases where "one attorney represents both a county and a county official individually," due to the parties' adverse interests. 628 F.2d 488, 495 n.7 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds,* 654 F.2d 304 (5th Cir. 1981) (en banc) (per curiam). The Second Circuit, relying on *Van Ooteghem*, explained why those interests may be adverse:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.

*Dunton v. Suffolk County*, 729 F.2d at 907. In *Dunton*, a similar situation as here was present: the same counsel represented both an individual defendant and the County as a municipality. After the trial ended in a jury verdict for plaintiffs, the Second Circuit reversed. The County had pursued a defense which was in *its* interest, that the individual officer was acting outside the scope of his duties, but failed to present a good-faith defense on the individual officer's behalf: "This was a good defense for the county, which eventually was dismissed from the action. However, it was not in the best interest of Pfeiffer, who was ultimately found liable in his individual capacity." *Id.* The County indemnified the individual for compensatory damages, but because the jury had also imposed punitive damages which the County did not indemnify, a new trial was required. *Id.* at 909–10.

In addition to the Fifth Circuit decision in *Van Ooteghem*, courts within the Fifth Circuit have also recognized this conflict. In *Shadid v. Jackson*, the parties raised the conflicts issue before trial. The District Court recognized that there was an "obvious potential for conflict of interest" where the same counsel represented an individual police officer and the City. 521 F. Supp. 87, 88–89 (E.D. Tex. 1981). "It is in the interests of this individual defendant to contend that if the events alleged did in fact occur, he was acting at all times in good faith within the scope of his lawful, official duties. Conversely, the City of Clarksville might try to avoid liability by proving that this police officer was acting without authority and outside the scope of his employment." *Id.* The Court held that the individual officers and municipality must be represented by separate counsel, because "an attorney seeking to represent both of these defendants with utmost zeal might find himself in an untenable position." *Id*. at 89.

The conflict identified in *Van Ooteghem*, *Dunton*, and *Shadid* is present here, and if not addressed, has the potential to negatively affect a future verdict. Plaintiffs have a claim against both the Sheriff's Office under *Monell*, as well as claims against current and former individual employees of that office. It is in the interest of the Sheriff's Office to defend against the *Monell* claim by showing that the individual defendants who failed to watch Mr. Goetzee on suicide watch, or failed to report that others were not watching Mr. Goetzee while he was on suicide watch, acted outside the scope of the jail's policies and customs. In contrast, it is in the individual defendants' interests, to avoid liability or at the very least to avoid punitive damages by pursuing a good-faith defense, to argue that they were acting in accordance with the jail's practices and customs.

This conflict is not limited to Plaintiffs' *Monell* claim against the Sheriff's Office. Plaintiffs have sued both supervisory defendants as well as lower-level jail employees in their

individual capacities. Individual, lower-level defendants, such as the nurses and deputies who were working directly on the jail's tiers, have an interest in showing that they reported failures to watch suicidal inmates to their supervisors, and thus were not themselves deliberately indifferent to the risk.[7] Supervisory staff members, in contrast, have an interest in showing that they were unaware of any failure to watch inmates on suicide watch, and thus were not themselves deliberately indifferent to those risks.[8] These positions are adverse and irreconcilably in tension. If it is in the best interest of each group of defendants to take these respective positions, one attorney would not be able to pursue them both at the same time, which would materially limit his or her representation of at least one set of these defendants.

These problems are especially grave because the individual defendants and Sheriff's interests are not financially aligned. The Sheriff has not committed to indemnifying compensatory, let alone punitive damages, or even to providing representation to all of the individual defendants on all of the claims. Worse still, although Plaintiffs filed this suit over two years ago and counsel answered the complaint on behalf of all defendants except Deputy Thompson, at both of the depositions of lower-level nursing staff that plaintiffs have taken so far in the case, the nurses recently testified that they had not even understood, prior to arriving at their depositions, that they were named defendants at all.[9]

---

[7] These defendants include Deputies Shelia Crader and Michael Williams, and nursing defendants Bargky, Johnson, Schaible, Batiste, Pembo and Wallace.

[8] These defendants include security supervisors, Sergeants Everett Marshall and Nicole Harris, and Warden Carlos Louque, and medical supervisors, Dr. Samuel Gore (medical director), Dr. Charles Mike Higgins (mental health director), Dr. Jose Ham, Mary Anne Benitez, and Darryl Jackson (nursing supervisor)

[9] *See* Exhibit C (Tr. of Deposition of nurse Esma Bargky, Aug. 21, 2014, page 22, lines 9–23); Exhibit D (Tr. of Deposition of nurse practitioner Charlene Johnson, Sept. 30, 2014, page 7, lines 6-16).

**B. Indemnification accompanied by informed consent in writing from each defendant could remedy the conflict; absent such remedies, Plaintiffs move for disqualification of counsel.**

Rule 1.7(b) provides that in certain circumstances, a concurrent conflict of interest may be waived. But waiver is only permitted when a lawyer "reasonably believes" that he can provide "competent and diligent representation to each affected client." Rule 1.7(b)(1).

Due to the clearly adverse positions described above, absent indemnification no lawyer could reasonably believe that concurrent representation would allow him or her to provide competent and diligent representation to each client. In *Shadid v. Jackson*, for example, the court held that the "unfairness inherent in the multiple representation of clients with potentially adverse interests" may not be curable even if there had been a "knowing and intelligent waiver by the defendants of their right to separate counsel." 521 F. Supp. at 90. If, however, the Sheriff's office committed to indemnifying each individual defendant for both compensatory and punitive damages, cases suggest that there would be no prejudice to each individual client and counsel should be able to provide competent and diligent representation to all. *See, e.g.*, *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 33 (E.D.N.Y. 2009) (finding no conflict of interest where County and police officers were represented by same counsel, because the interests of the County and officers were "aligned" when the County decided to indemnify the officers; "any judgment against [the officer] will effectively be one against the County"); *Lieberman v. City of Rochester*, 681 F. Supp. 2d 418, 427-28 (W.D.N.Y. 2010) (counsel not conflicted from representing both officers and municipality where municipality "affirmed that the Officers were acting within the scope of their employment" and thus would "indemnify the Officers for compensatory and punitive damages").[10]

---

[10] Although *Shadid* found the conflict was unwaivable on the facts before it, it did not address indemnification. Subsequent Fifth Circuit cases have made clear that "[t]he rule of

9

Finally, to waive a conflict, defendants must give informed consent in writing. *See* Rule 1.7(b)(4). There is no indication that any defendant has done so in this case; indeed, the fact that several defendants were not even aware that they were named defendants before their depositions suggests that they have not. Even if the Sheriff's office indemnifies all individual defendants, in order to satisfy Rule 1.7(b) each individual defendant should provide informed consent in writing.

The Fifth Circuit, "sensitive to preventing conflicts of interest," has made clear that a "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *In re Am. Airlines, Inc.*, 972 F.2d at 611 (quotation omitted). If these conflicts are not addressed now, Plaintiffs are very concerned about any possibility of having a successful verdict in this matter susceptible to challenge on appeal due to an issue of conflicts in representation of any defendants at trial. *See, e.g.*, *Dunton*, 729 F.2d 903 (reversing plaintiff's verdict in civil rights case on basis of conflict of interest where same lawyers had represented municipality and individual defendants); *Marderosian v. Shamshak*, 170 F.R.D. 335 (D.Mass. 1997) (same). In order to address this conflict, the Sheriff's office should commit to representing and indemnifying each individual defendant on each claim, for both compensatory and punitive damages, and then secure informed consent in writing. If such commitments are not

---

disqualification is not mechanically applied in this Circuit" because that "would abrogate important societal rights, such as the right of a party to his counsel of choice and an attorney's right to freely practice her profession." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995). A "court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake. Among the factors that we have considered in the past are 'whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case.'" *Id.* (quoting *In re Dresser Industries, Inc.*, 972 F.2d 540, 544 (1992)). As courts within the Second Circuit have found, full indemnification and informed consent could address any potential or actual conflict of interest.

secured, in order to protect any future verdict and protect each individual defendant's right to a fair trial, each defendant should be represented by separate counsel and Plaintiffs respectfully request a hearing at which the Court would determine which parties' interests—if any—are sufficiently aligned to permit representation by the same counsel.

**Conclusion**

This issue, if unresolved, has the potential to cause great harm to an ultimate, just resolution of this dispute. Plaintiffs do not wish to run the risk and expense of trial with the possibility of a reversal of a favorable verdict due to allegations of conflicted representation. Certainly defense counsel would not wish to be placed in a situation where one of their clients may have potential grounds to assert claims of disloyal representation. It is in the interest of the Court, the public, the parties and all counsel, that there be confidence that any verdict rendered in this matter has been arrived at through a fair and equitable process with conflict-free representation.

It is respectfully requested that this Motion be granted

Dated: October 20, 2014

/s/ Alexandra Lampert
Barry Scheck, NY Bar No. 1634765
Nick Brustin, NY Bar No. 2844405
Emma Freudenberger, NY Bar No. 4538070
Alexandra Lampert, NY Bar No. 5085915
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

/s/ Mary E. Howell
Mary E. Howell, LSBA #07030
Attorney at Law
316 S. Dorgenois Street
New Orleans, LA 70119

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of *Memorandum in Support of Plaintiffs'*

*Motion to Determine Conflict-Free Representation* was served on October 20, 2014, via ECF on

all of the following parties of record:

Sheriff Marlin N. Gusman, Dr. Samuel Gore, Dr. Charles Higgins, Dr. Jose Ham, Mary Anne Benitez, Darryl Jackson, PLN Wallace, S. Pembo, S. Batiste, David Schaible, E. Bargky, C. Johnson, Warden Carlos Louque, Sgt. Nicole Harris, Sgt. Everett Marshall, Deputy Michael Williams, and Deputy Shelia Crader

*through their attorneys of record*

Freeman R. Matthews and
Blake J. Arcuri
Usry, Weeks and Matthews
1615 Poydras Street, Suite 1250
New Orleans, LA 70112
(504) 592-4600
Pmatthews@uwmlaw.com
barcuri@uwmlaw.com

James M. Williams and
Inemesit U. O'Boyle
Gauthier Houghtaling & Williams
3500 N. Hullen Street
Metairie, LA 70002
(504) 456-8600
JMW@ghwlegal.com
inem@ghwlegal.com

And by U.S. Mail on the following party:

William Thompson
3020 Rue Parc Fontaine
Apt 1131
New Orleans, LA 70131

        /s/ Alexandra Lampert
        Alexandra Lampert
        *One of Plaintiffs' Attorneys*