UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARGARET GOETZEE NAGLE, ET AL.          CIVIL ACTION

VERSUS                                  NO: 12-1910

SHERIFF MARLIN GUSMAN, ET AL.           SECTION: R

<u>**ORDER AND REASONS**</u>

In October, plaintiffs alerted the Court that the firm representing the defendants might be conflicted because many of the defendants have interests adverse to one another.  The Court ordered the parties to meet and confer to determine whether some of plaintiffs' claims could be dismissed against certain defendants so as to eliminate some of the potential conflicts. The Court further ordered the parties to brief any potential conflicts remaining after their meet and confer.

The parties have conferred and agreed on a way to resolve the potential conflicts affecting most, but not all, of the defendants.  They have also briefed the remaining alleged conflicts.

**I.   BACKGROUND**

This case arises out of the August 7, 2011 suicide of William Wesley Goetzee (Mr. Goetzee) while he was held as a pretrial detainee at Orleans Parish Prison.  After his death, Mr. Goetzee's sister and brother, Margaret Goetzee Nagle and John Eric Goetzee, filed this section 1983 civil rights suit and state

law wrongful death and negligence suit against Sheriff Marlin Gusman and numerous employees of the Orleans Parish Sheriff's Office.

### A.   Potential Conflicts

Plaintiffs identify two potential conflicts of interest resulting from the concurrent representation by the same counsel of all of the defendants.

First, in section 1983 cases, the interests of a municipality and the interests of its employees are adverse to one another.  *See Van Ooteghem v. Gray*, 628 F.2d 488, 495 n.7 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir. 1981) (en banc) (per curiam).  Thus, plaintiffs' section 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), creates a potential conflict of interest between Sheriff Gusman in his official capacity, and the employee defendants in their individual capacities.  The Second Circuit has succinctly summarized the conflict:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good

faith immunity of its employees as a defense to a section
1983 action.

*Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 907 (2d
Cir.) *amended*, 748 F.2d 69 (2d Cir. 1984) (relying on *Van
Ooteghem*, 628 F.2d 488).

Second, the proof required for individual section 1983
liability also creates a potential conflict of interest between
the "lower-level" security and nursing defendants who were
directly involved in Mr. Goetzee's care and the "supervisory"
security and nursing defendants to whom the lower-level
defendants reported.  Specifically, for a government official to
be liable under section 1983, he or she must have exhibited
"deliberate indifference" under *Farmer v. Brennan*, 511 U.S. 825
(1994).  *See Hare v. City of Corinth (Hare III)*, 74 F.3d 633,
648-49 (5th Cir. 1996) (en banc).  A prison official acts with
subjective deliberate indifference when he or she (1) "knew of"
and  (2) "disregarded an excessive risk to the [detainee's]
health or safety."  *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th
Cir. 2008) (citation omitted).  Therefore, the lower-level
defendants have an interest in proving that they reported
failures to supervise suicide watch detainees and thus did not
"disregard" risks to detainees' health.  In contrast, supervisory
defendants have an interest in proving that they were not
informed of any failures to observe suicidal detainees and thus
did not "know of" the risks to detainees' health.

3

In sum, a potential conflict exists (1) between Sheriff Gusman in his official capacity and all of his employees in their individual capacities and (2) between the lower-level employees and the supervisory employees.

**B.   Agreement Between Parties to Simplify Representation**

Plaintiffs take the position that both potential conflicts may be waived if (1) Sheriff Gusman agrees to indemnify all defendants for both compensatory and punitive damages, and (2) the defendants knowingly and voluntarily execute signed conflict waivers.

To simplify the representation required, defendants agree to indemnify all individual defendants (other than Defendant Thompson, the guard assigned to watch Mr. Goetzee, who is currently proceeding *pro se*) for <u>compensatory damages, costs, and attorneys' fees</u>.  In exchange, plaintiffs agree to dismiss their <u>punitive damages</u> claims against all defendants except for the three "policy-making" defendants: Sheriff Gusman, Dr. Samuel Gore, and Dr. Mike Higgins.  Defendants do not agree to indemnify Dr. Gore or Dr. Higgins for punitive damages.

Under this arrangement, and assuming that the fully indemnified defendants all execute valid conflict waivers, the parties agree that the fully indemnified defendants could be represented by the same firm(s) as Sheriff Gusman.  Because Dr. Gore and Dr. Higgins are not fully indemnified under this scheme,

4

Sheriff Gusman has agreed to pay for separate counsel for Dr.
Gore and for Dr. Higgins.

### C.    Remaining Alleged Conflict

Plaintiffs argue that both Usry, Weeks and Gauthier,
Houghtaling, the law firms engaged to represent the fully
indemnified defendants and Sheriff Gusman in his official
capacity, must withdraw from the case or be disqualified by the
Court.  Plaintiffs contend that because these law firms have
until this point represented *all* defendants, including Dr. Gore
and Dr. Higgins, they may not continue as counsel for Gusman and
the fully indemnified defendants, because the interests of Dr.
Gore and Dr. Higgins are potentially adverse to the interests of
Gusman and the other defendants.

## II. DISCUSSION

The Court first reviews the parties' agreement to simplify
the representation of the fully indemnified defendants, and then
analyzes Usry, Weeks's and Gauthier, Houghtaling's alleged
conflict of interest.

### A.    Agreement Between Parties to Simplify Representation

As discussed above, the parties have agreed that going
forward there will be three separately represented groups: (1)
Dr. Gore; (2) Dr. Higgins; and (3) Sheriff Gusman in his official
capacity along with the fully indemnified employee defendants.
Although the employee members of this last group have interests

5

potentially adverse to each other and to Sheriff Gusman in his
official capacity, plaintiffs agree that these defendants and
Sheriff Gusman may all be represented by the same counsel,
provided that the defendants knowingly and voluntarily execute
signed conflict waivers.  Plaintiffs further assert, however,
that these waivers of conflict should occur "under oath at a
conflicts hearing," rather than in writing.[1]

The Court concludes that no hearing is necessary for the
fully indemnified defendants.  Given that plaintiffs have agreed
to drop their punitive damages claims against these defendants
and that the Sheriff's Office has agreed to indemnify them
against compensatory damages, costs, and fees, the Sheriff's
Office's financial interests are now aligned with these
defendants' financial interests.  Therefore, written conflict
waivers will be sufficient.

The Court orders that each of the fully indemnified employee
defendants file into the record two documents: (1) an affidavit
by the defendant waiving the potential conflict of interest with
the other defendants represented by the same counsel, and waiving
the potential conflict of interest with Dr. Gore and Dr. Higgins
(as explained in the next section) and (2) an affidavit by
defense counsel, averring (a) that the Sheriff's Office has
agreed to indemnify the defendant for compensatory damages,

_____

[1]    R. Doc. 138-1 at 4.

6

costs, and attorneys' fees and (b) that counsel has met with the defendant and explained the litigation, the claims against the defendant, the ways in which the defendant's interest is potentially adverse to the interests of the other defendants represented by the same counsel, the effect of the indemnification agreement, the ways in which the firm's representation of the defendant may be limited by its obligations to Dr. Gore and/or Dr. Higgins (as explained in the next section), and the effect of waiving these conflicts.  For the reasons explained in the next section, however, the fully indemnified defendants should wait to complete these documents until the Court has determined whether Usry, Weeks and Gauthier, Houghtaling may stay on the case as their counsel.

**B.  Alleged Conflict of Usry, Weeks and Gauthier, Houghtaling**

As a threshold matter, the Court must determine whether plaintiffs have standing to move to disqualify opposing counsel. In *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83 (5th Cir. 1976), the Fifth Circuit held that, as a general rule, "courts do not disqualify an attorney on the grounds of conflict of interest unless the *former client* moves for disqualification." *Id.* at 88 (emphasis added).  The *In re Yarn* court identified a few "narrow exceptions" to this general rule, for cases in which "the unethical change of sides [is] manifest and glaring" or

"open and obvious," thereby "confront[ing] the court with a plain duty to act." *Id.* at 88-89 (citations omitted).

All of the cases cited by plaintiffs involve motions by former clients. But the Fifth Circuit views disqualification motions by third parties with a more critical eye than it does motions by former clients. *Id.* at 90. Thus, none of plaintiffs' cases accurately identifies the standards applicable to their motion. Because plaintiffs are not former clients, the Court may disqualify opposing counsel on their motion only if the conflict fits within *In re Yarn*'s narrow exceptions--that is, if the "unethical change of sides" is so "manifest and glaring" or "open and obvious" that it "confront[s] the court with a plain duty to act." *Id.* at 88-89 (citations omitted).

In addition, although a "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it," it must not impose the sanction of disqualification "cavalierly." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299-300 (5th Cir. 2009) (citations omitted). Indeed, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *Id.* The Court must consider "[a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.*

With these standards in mind, the Court assesses Usry, Weeks's and Gauthier, Haughtaling's change of representation under the applicable ethical rules. Disqualification motions are governed by "state and national ethical standards adopted by the court." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)). "The local rules promulgated by the local court itself are the most immediate source of guidance for a district court." *Id.* at 1312. Nonetheless, because "[m]otions to disqualify are substantive motions," they are decided under federal law. *Id.* Thus, also relevant are "the ethical rules announced by the national profession," the public interest, and the litigant's rights. *Id.* Courts in the Fifth Circuit look to the "norms embodied in the [ABA] Model Rules and the Model Code" for "the national standards" applicable to disqualification motions. *Id.*

The Eastern District of Louisiana has adopted the Louisiana State Bar Association's Rules of Professional Conduct. *See* Local Civ. Rule 83.2.3. These rules are identical to the ABA's Model Rules of Professional Conduct. This case implicates two of these rules. First, it implicates the rule governing an attorney's duty to his or her former clients. That rule provides, in relevant part:

**RULE 1.9. DUTIES TO FORMER CLIENTS**

9

> (a)   A lawyer who has formerly represented a client in a
>       matter shall not thereafter represent another
>       person in the same . . . matter in which that
>       person's interests are materially adverse to the
>       interests of the former client unless the former
>       client gives informed consent, confirmed in
>       writing.

Here, Usry, Weeks has represented Dr. Gore and Dr. Higgins since
this case began two and a half years ago.  Gauthier, Haughtaling
entered an appearance late last year, and plaintiffs represent
that since joining the case, Gauthier, Haughtaling has appeared
at court hearings and depositions, including the depositions of
both Dr. Gore and Sheriff Gusman.  Thus, if the firms have now
stopped representing Dr. Gore and Dr. Higgins in this case, then
Dr. Gore and Dr. Higgins qualify as their former clients.
Therefore, if it is true that the interests of the Sheriff's
Office and the lower-level defendants are "materially adverse" to
Dr. Gore and Dr. Higgins, as outlined above, then the firms
should not continue to represent Gusman and the fully indemnified
defendants without the doctors' "informed consent, confirmed in
writing."  Without this waiver, the firms would be in violation
of the rule.

    Second, this case also implicates the rule governing
conflicts of interests related to current clients.  That rule
provides, in relevant part:

**RULE 1.7. CONFLICT OF INTEREST: CURRENT CLIENTS**

(a)   . . . a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1)   the representation of one client will be directly adverse to another client; or
(2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client . . . .

(b)   Notwithstanding the existence of a concurrent conflict of interest . . . , a lawyer may represent a client if:
(1)   the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2)   the representation is not prohibited by law;
(3)   . . . ; and
(4)   each affected client gives informed consent, confirmed in writing.

Plaintiffs have submitted a list of cases from PACER in which Usry, Weeks and Gauthier, Houghtaling currently represent Dr. Gore and Dr. Higgins in other litigation related to events at the prison.[2]  Because Dr. Gore and Dr. Higgins are current clients of both firms, they are entitled to the protections of the rule governing concurrent representation.  In addition, Sheriff Gusman and the fully indemnified defendants are also entitled to the rule's protections, because they are the firms' current clients in this case.  If the firms have received information in confidence from Dr. Gore or Dr. Higgins in the course of their

---

[2]    R. Doc. 138-2 at 2.

representation, and that information is relevant to the defenses of the Sheriff's Office or the fully indemnified defendants here, then there is a "significant risk" that the firms "will be materially limited" by their conflicting responsibilities to each set of clients.  The firms have an ethical obligation to represent all of their clients zealously, as well as an ethical obligation not to use information gained in confidence in the course of representing one client to that client's disadvantage. Thus, a concurrent conflict of interest exists.

The ABA's Model Code also addresses concurrent conflicts of interest.  It provides, in relevant part:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who *may* have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Ethical Canon 5-14 (emphasis added).  The Code states the duty of an attorney in this situation:

> If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, *he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided* if he accepts or continues the employment.  *He should resolve all doubts against the propriety of the representation.*  A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from

> employment with likelihood of resulting hardship on the
> clients; and for this reason it is preferable that he
> refuse the employment initially.

Ethical Canon 5-15 (emphasis added).  Even after an attorney

representing clients with potentially differing interests has

weighed the risks and determined that representation may

continue, she nevertheless owes each client an full explanation

of the issues involved.  Specifically:

> In those instances in which a lawyer is justified in
> representing two or more clients having differing
> interests, it is nevertheless essential that each client
> be given the opportunity to evaluate his need for
> representation free of any potential conflict and to
> obtain other counsel if he so desires. *Thus before a
> lawyer may represent multiple clients, he should explain
> fully to each client the implications of the common
> representation and should accept or continue employment
> only if the clients consent.*

Ethical Canon 5-16.

In sum, both the applicable rules and the Model Code suggest

that, here, concurrent representation of clients with potentially

conflicting interests may continue only if (1) the firms

reasonably believe that they can provide competent, diligent,

and unimpaired representation to both sets of clients and (2) the

clients have given their informed consent.  Moreover, the rules

require that this consent be "confirmed in writing."  Here,

however, there is no evidence that Sheriff Gusman, Dr. Gore, Dr.

Higgins, or any of the fully indemnified defendants have been

informed of the potential conflict, much less consented to it.

Absent this showing, the firms run afoul of the ethical standards applicable to concurrent conflicts of interest.

Both of the potential ethical violations identified by the Court are "open and obvious"; thus, this case fits within *In re Yarn*'s narrow exceptions, and the Court can intervene. *In re Yarn*, 530 F.2d at 89. After reviewing the record and the parties' briefing on the conflict issue, the Court concludes that it needs more information to determine whether the firms can continue to represent Sheriff Gusman and the fully indemnified defendants under the applicable ethical rules, in light of their former and concurrent representation of Dr. Gore and Dr. Higgins.

First, the Court needs evidence as to whether the doctors wish to waive the potential conflicts. Plaintiffs suggest that a "full-blown hearing" is necessary before the doctors can waive the potential conflicts.[3] They assert that "such a hearing would be unusual and dramatic in terms of its scope and complexity."[4] Plaintiffs cite no law for these propositions, and it is unclear what they mean by "full-blown" hearing or why they think the law requires one. The Court could do with less drama and more law. In any event, *In re Yarn* is clear that the doctors may waive the conflict: "A former client may consent to the employment of [an] attorney by an adverse party even where the former client is

---

[3]    R. Doc. 138-1 at 9.

[4]    *Id.*

14

involved in the case as a party." 530 F.2d at 89.  As that court
explained, this "might typically occur where the former client
realizes that any prior disclosures will not prejudice him in the
new case." *Id.; see also* Model Rules of Prof'l Conduct R. 1.7
(listing conditions for client waiver of concurrent conflicts).
But the current record contains no indication that the doctors
have consented to the potential conflicts.  In addition, the
applicable ethical rules require that any consent by the doctors
be informed and in writing.  If the doctors chose to consent,
then the Court will also need evidence as to whether Sheriff
Gusman and the other defendants consent.  Further, the Court will
need the challenged firms to provide their own assessment of the
propriety of the concurrent representation, based on their
knowledge of the information in their possession and their likely
trial strategy, among other considerations.

Therefore, the Court will proceed as follows.  First, Dr.
Gore and Dr. Higgins shall consult with their new counsel and
determine whether they wish to consent to Usry, Weeks's and
Gauthier, Houghtaling's representation of other defendants with
interests potentially adverse to theirs.  If either doctor does
not wish to consent to the conflict, then he shall join
plaintiffs' motion to disqualify Usry, Weeks and Gauthier,
Houghtaling, and submit a brief of no more than 15 pages on the
conflict issue by <u>April 21, 2015</u>. If either doctor joins the

motion to disqualify, defendants' oppositions of no more than 15 pages will be due April 28, 2015, with replies of no more than 10 pages due May 6, 2015.

Alternatively, if, after consulting with their new counsel, both Dr. Gore and Dr. Higgins wish to waive the potential conflict, then each doctor shall submit an affidavit certifying his informed consent to the potential conflict by April 21, 2015. In that event, counsel from both Usry, Weeks and Gauthier, Houghtaling shall submit, by April 28, 2015, under seal, an affidavit explaining how they can "provide competent and diligent representation to each affected client"--that is, to their clients in this case, and to Dr. Gore and Dr. Higgins in the other cases in which the firms represent them--despite the conflict. In addition, the firms should submit a signed conflict waiver by Sheriff Gusman, on behalf of the Sheriff's Office, also by April 28, 2015.

After the Court has reviewed these submissions, the Court will decide whether Usry, Weeks and Gauthier, Houghtaling may remain on the case. If the Court decides that they can remain on the case, then the Court will set a deadline for the other defendants to submit the documents related to their conflict waivers. If the Court decides that they cannot, then the Court will set a status conference to discuss the selection of new counsel.

16

III. CONCLUSION

The Court summarizes the documents due to the Court and the relevant deadlines.

If Dr. Gore or Dr. Higgins **object** to the conflict of interest, the following deadlines apply:

- <u>April 21, 2015</u>: Objecting doctor(s) must submit a brief of no more than 15 pages in support of the motion to disqualify Usry, Weeks and Gauthier, Houghtaling.

- <u>April 28, 2015</u>: Defendants' opposition of no more than 15 pages is due.

- <u>May 6, 2015</u>: Replies of no more than 10 pages are due.

If Dr. Gore or Dr. Higgins **consent** to the conflict of interest, then the following deadlines apply:

- <u>April 21, 2015</u>: Consenting doctor(s) must submit an affidavit certifying his informed consent to the conflict.

- <u>April 28, 2015</u>: Both Usry, Weeks and Gauthier, Houghtaling must submit, under seal, an affidavit explaining how they can "provide competent and diligent representation to each affected client"--that is, to their clients in this case, and to Dr. Gore and Dr. Higgins in the other cases in which the firms represent them--despite the conflict.

17

- <u>April 28, 2015</u>: Sheriff Gusman, on behalf of the
  Sheriff's Office, shall submit an affidavit waiving (1)
  the potential conflicts with the fully indemnified
  defendants and (2) the potential conflicts with Dr.
  Gore and Dr. Higgins.

If, after reviewing these documents, the Court determines
that Usry, Weeks and Gauthier, Houghtaling may remain on the
case, then the Court will set a deadline for defendants to submit
the following documents on behalf of each of the fully
indemnified defendants:

(1)   an affidavit by the defendant waiving the potential
      conflict of interest with the other defendants
      represented by the same counsel, and waiving the
      potential conflict of interest with Dr. Gore and Dr.
      Higgins; and

(2)   an affidavit by defense counsel, averring (a) that the
      Sheriff's Office has agreed to indemnify the defendant
      for compensatory damages, costs, and attorneys' fees
      and (b) that counsel has met with the defendant and
      explained the litigation, the claims against the
      defendant, the ways in which the defendant's interest
      is potentially adverse to the interests of the other
      defendants represented by the same counsel, the effect
      of the indemnification agreement, the ways in which the

firm's representation of the defendant may be limited

by its obligations to Dr. Gore and/or Dr. Higgins, and

the effect of waiving each of the identified conflicts.

In addition, if any of the documents that the Court has

ordered defendants to file contains confidential client

information or information subject to the attorney-client

privilege or work-product privilege, defendants may file the

document under seal.

New Orleans, Louisiana, this <u>1st</u> day of April, 2015.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

19